UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
|         Plaintiff | ) | |
| | ) | |
|         v. | ) | No. 2:03 CV 203 |
| | ) | (No. 2:99 CR 191) |
| LEON THOMAS | ) | |
|         Defendant | | |

**OPINION and ORDER**

This matter is before the court on defendant Leon Thomas' motion to vacate his conviction and/or his sentence pursuant to 28 U.S.C. § 2255.  A § 2255 motion allows a person in federal custody to attack his conviction and/or sentence collaterally on constitutional grounds, because the court that imposed it was without jurisdiction, because the sentence exceeds the maximum authorized by law, or because it is otherwise illegal.

On June 20, 2000, a jury found Thomas guilty of three violations of 18 U.S.C. § 922: possession of a firearm as a convicted felon in violation of § 922(g)(1); receipt of a firearm while being under indictment for a felony in violation of § 922(n), and; bartering a stolen firearm in violation of § 922(j). At his sentencing on  September 6, 2000, the § 922(n) charge was dismissed and the conviction was vacated. At sentencing, the court found Thomas to be an armed career criminal under 18 U.S.C. § 924(e) (commonly called the Armed Career Criminal Act and referred to herein as "ACCA"), and sentenced him to a term of life imprisonment on the felon-in-possession conviction, and 120 months on the bartering conviction, the terms to be served concurrently.

Thomas took a direct appeal. His convictions were affirmed, but his life sentence on the felon-in-possession charge was vacated and the case remanded for resentencing. *United States v. Thomas*, 280 F.3d 1149 (7th Cir. 2002). At his resentencing on May 9, 2002, he was sentenced to a term of imprisonment of 235 months on the felon-in-possession charge, with the 120-month term on the bartering conviction running concurrently. Thomas again took a direct appeal, but the Court of Appeals affirmed on December 16, 2002, by unpublished order. *United States v. Thomas*, 53 Fed. Appx. 386 (7th Cir. 2002).

Thomas filed a timely § 2255 motion on June 2, 2003, and filed amendments to that motion, along with requests for leave to do so, on June 13, 2003, July 30, 2004, and July 19, 2005.[1] The government's response to the motion was filed on May 12, 2004, after Thomas' first amendment, but prior to his second two amendments. Because a § 2255 motion may be freely amended as long as the amendments do not add entirely new claims after the one-year deadline for filing the motion has passed, see *Rodriguez v. United States*, 286 F.3d 972, 980-81 (7th Cir. 2002); *Johnson v. United States,* 196 F.3d 802, 805 (7th Cir.1999), the court has considered each of Thomas' amendments. The court has not ordered the government to file an additional response to the second two amendments because a response is unnecessary. Finally, on July 19, 2005, Thomas

---

[1] Also, on August 26, 2003, Thomas made a general request for discovery pursuant to Rule 6 of the Rules Governing § 2255 Proceedings in the District Courts. On November 7, 2003, the government responded to that motion by producing copies of every document that had not been purged from its case file, and Thomas never informed the court that the government's response was inadequate or that he needed additional discovery, making his motion moot.

moved for the court to hold an evidentiary hearing. Because the issues Thomas raises can be decided as a matter of law based on the existing record without any need for evidence, the court **DENIES** that motion.

For the purposes of analysis and discussion, it is convenient to summarize or group the issues raised by Thomas into five claims: ineffective assistance of counsel; actual innocence (largely based on an assertion that the government failed to disclose exculpatory evidence, which is also part of the basis for his ineffective assistance claim); invalid application of the ACCA and Sentencing Guidelines under *Blakely v. Washington,* 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004); an invalid sentence because he did not receive a downward departure under Guidelines § 5H1.4; and violation of his Sixth Amendment rights by improper use of a statement, based on *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004) (this issue is also part of Thomas' ineffective-assistance claim).

For the purposes of the analysis below, the court will organize its discussion on the basis of these groups. However, many of the issues raised by Thomas, particularly in regard to ineffective assistance of counsel, serve more than one claim and do not fit neatly within these categories. Thus, while the court's discussion is served by using this organizing method, in its consideration of Thomas' motion the court has tried not to "pigeonhole" each allegation and as appropriate considers Thomas' arguments as a whole.

3

*Ineffective Assistance of Counsel*

As is commonly the case in § 2255 proceedings, Thomas asserts that his convictions resulted from ineffective assistance of trial counsel, and he has marshalled a long list of what he believes to be errors made by his attorney demonstrating that ineffectiveness. Although Thomas mentions some of these errors in summary fashion, with little supporting explanation, the court will attempt below to address every allegation Thomas makes. The court does this to determine whether any alleged errors, whether viewed individually or collectively, were so serious as to amount to a deprivation of Thomas' right to constitutionally-effective representation.

To establish that he received ineffective assistance of counsel, Thomas must satisfy a two-pronged test, establishing both deficient performance by his attorney, and prejudice resulting therefrom. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Establishing a deficient performance is difficult, because Thomas must show that the errors made were so serious that he was deprived of "counsel" within the meaning of the Sixth Amendment, in the face of a strong presumption that counsel rendered adequate assistance and made significant decisions in the exercise of his reasonable professional judgment. *Id.,* 466 U.S. at 690, 104 S. Ct. at 2066. If a deficient performance is established, Thomas must then establish prejudice, that is, a reasonable probability that, were it not for the attorney's mistakes, the proceeding would have had a different outcome. *Id.,* 466 U.S. at 694, 104 S. Ct. at 2052. If

4

the court decides that Thomas has made an insufficient showing on either prong of the test, his claim should be denied. *Id.,* 466 U.S. at 697, 104 S. Ct. at 2069.

Taking Thomas' allegations of attorney error in the order he makes them, Thomas first alleges that his attorney failed to raise or preserve a violation of his right to a speedy trial. Under the Speedy Trial Act, 18 U.S.C. § 3161, the trial must commence within seventy days after the last of one of two events, the filing of the information of indictment, or the defendant's initial appearance. 18 U.S.C. § 3161(c)(1). However, many periods of delay are excluded from the seventy-day computation, for example, periods allowed for filing and resolving pretrial motions, § 3161(h)(1)(F) and continuances which are found to serve the ends of justice and outweigh the interest of the defendant and the public in a speedy trial, § 3161(h)(8)(A).

Thomas' initial appearance was on November 22, 1999, and his trial was originally scheduled for February 7, 2000, with at least ten days of that period being excludable time allowed for the filing of pretrial motions. On January 25, 2000, Magistrate Judge Rodovich granted the government's motion to continue the trial date until April 10, 2000, finding the time excludable pursuant to § 3161(h)(8)(A). Then, on March 22, 2000, a superseding indictment was returned adding two new charges against Thomas, and his initial appearance on those charges was on April 12, 2000, starting the speedy trial clock running anew. *See United States v. McKay,* 30 F.3d 1418, 1420 (11th Cir. 1994); *cf. United States v. Hemmings*, 258 F.3d 587, 593 (7th Cir. 2001)

5

(superseding indictment which only corrects original charges does not start a new seventy-day period).

On May 26, 2000, Magistrate Judge Rodovich continued the trial to June 19, 2000, finding the time to be excludable in part because necessitated by Thomas' refusal to submit blood samples for testing. In any event, the trial did commence on June 19, 2000, within the seventy days following April 12, 2000, even without the additional excludable time. In short, there was no speedy trial violation for Thomas' attorney to raise or preserve.

Next, Thomas complains that his attorney failed to raise "various pretrial matters," including a motion to suppress evidence (although Thomas does not explain what evidence should have been suppressed, or why it should have), and failed to meet with him to review discovery provided by the government and to confer on trial strategy. To demonstrate ineffective assistance, Thomas must explain specifically what his attorney should have done, but failed to do, and how that failure impacted the outcome: vague allegations like these do not satisfy the first prong of the *Strickland* test. *See United States v. Herrera-Rivera*, 25 F.3d 491, 496 (7th Cir, 1994).[2]

The only concrete explanation that Thomas offers is:

---

[2] Thomas compares his case to *Williams v. Washington*, 59 F.3d 673 (7th Cir. 1995), which he summarizes as holding that an overwhelming failure to investigate the facts constitutes ineffective assistance. In that case, however, the court pointed out specific failures and the likely prejudice resulting therefrom, remarking that " failure to investigate cannot be used as a substitute for proof of prejudice." *Id*. at 684.

6

> The importance of conferring with me is obvious considering the fact that the government's star-witness, Mr. Gerald Blunt made incriminating statements against me to both the Gary Police Detective as well as the federal prosecutor. It was imperative that my attorney do some form of background investigation on this potential government witness to properly prepare for cross-examination, but Mr. Peteet [defense counsel] once again failed to do any pre-trial investigation.

Memorandum in support of motion at 3. However, Blunt did not appear as a government witness at trial, making defense counsel's failure to prepare for his cross-examination meaningless.

To the extent, if any (the court may be reading too much into Thomas' arguments here) that Thomas is claiming that his attorney should have used Blunt as a defense witness, that is so speculative a scenario that the presumption of effective assistance cannot be overcome. Thomas' theory of defense was that Blunt was the one who had possessed, and bartered, the stolen firearm for drugs. The chance that Blunt, who, according to grand jury testimony provided to the defense during discovery (and again to Thomas in this proceeding) told investigators that Thomas possessed and bartered the firearm, would have reversed course and admitted his own (alleged) violation of federal law to provide a defense for Thomas, is nil.[3]

---

[3] In addition, according to Thomas, Blunt is the person who shot and killed the owner of the stolen firearm, Armando Leal. Leal's homicide was the focus of the investigation at the time that Thomas was arrested. If what Thomas says is true, the chance that Blunt would testify as a defense witness becomes even more improbable.

Next, Thomas argues that his attorney was ineffective because during trial he allowed "a clear Brady violation to occur and go uncorrected." Memorandum in support of motion at 3. In *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), the Court held that the prosecution's suppression of evidence that is favorable to the accused violates due process if the evidence is material to either guilt or punishment. To establish a *Brady* violation, a defendant must show that: 1) the evidence in question is exculpatory or impeaching; 2) it was suppressed by the prosecution, whether done wilfully or inadvertently; and 3) prejudice resulted. *Strickler v. Greene*, 527 U.S. 263, 281-82, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999). The prejudice component requires that materiality be established, that is, a reasonable probability that disclosure of the evidence to the defense would have resulted in a different outcome. *Kyles v. Whitley*, 514 U.S. 419, 433-34, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995).

At Thomas' trial, three police investigators who interviewed Thomas following his arrest—Anthony Titus, William Fazekas and Michael Jackson–testified that Thomas admitted to them that he had bartered the stolen gun to Michael Hutcherson in exchange for crack cocaine.[4] During cross-examination, Titus testified that no argument had taken place with Thomas, and that Thomas had never stated that Gerald Blunt was the person who had bartered the gun to Hutcherson in exchange for drugs, this latter

---

[4] Although one of the investigators, Anthony Titus, memorialized the statement in the form of an FBI 302, Thomas never adopted the written version and the writing was not admitted into evidence. The only evidence of the statement heard by the jury at trial was the three investigators' testimony as to what Thomas had told them.

8

detail also confirmed by the testimony of Jackson and Fazekas. However, as Thomas points out, Fazekas admitted that an argument had taken place, contrary to Titus' testimony and also omitted from the FBI 302 that Titus prepared.[5]

Thus, Thomas argues that "much was missing from Det. Titus' version of the alleged statement."[6] According to Thomas, during the argument he told the investigators that he had never possessed the firearm—Blunt had—and that they threatened Thomas with a firearms charge if he would not cooperate in the Leal homicide investigation. He concludes: "The importance of the original statement/conversation is that it would have clearly showed that the movant adamantly denied possessing any type of firearm at any time." Continuing, Thomas argues that this was a *Brady* violation that his attorney ineffectively let stand uncorrected, because both Titus and Jackson admitted having copies of their original notes, but were never ordered to produce the documents to the defense. Thomas

---

[5] Fazekas' admission that an argument took place occurred outside the presence of the jury, during a hearing to determine whether Thomas's statements were made voluntarily. Thomas' attorney had good reason to avoid getting into this issue with Fazekas before the jury. The argument concerned the homicide of Armando Leal, which the investigators believed that Thomas had committed. Thomas' defense counsel successfully kept the government from introducing evidence, or hinting, that Thomas was the primary suspect. Getting into details concerning the argument could have opened the door on this issue.

[6] Thomas is also troubled by the fact that the jury heard Titus state that he had taken "verbatim" notes of what Thomas had said. However, as Thomas himself points out, during Titus' cross-examination defense counsel very effectively succeeded in having Titus admit that his notes were not verbatim. Trial tr. vol. 1, p. 229. Indeed, considering all of Titus' testimony, it appears that he may not understand what "verbatim" means, an observation the jury also could have easily made.

assumes that their original notes would have memorialized Thomas' alleged statement that he never possessed a firearm.

This version of the events is more or less completely unsupported by the record, and Thomas's assumption—as to Jackson, at the very least—is completely unfounded. First, Titus never admitted that he had kept of a copy of his original notes, after typing them up as an FBI 302. Instead, he testified that he might have a copy but was "not sure." Trial tr. vol. 1, p. 227. On the other hand, Jackson, during cross-examination at the end of the first day of trial, admitted that he did have his original handwritten notes of the interview with Thomas, a fact that took both the government and the defense by surprise. Trial tr. vol. 1, p. 245-46, 250. Defense counsel immediately requested a copy of those notes, and they were to be provided to him overnight. Trial tr. vol. 1, p. 250. The following morning the trial concluded, with no mention of the notes made again, indicating both that defense counsel did receive them and that they did not contain any exculpatory information. Without the existence of notes containing the statement at issue, there is no possible *Brady* violation.

Finally, even if any handwritten notes of the interview ever did exist which showed that Thomas had claimed that he had never possessed the gun, the court still does not believe that a *Brady* violation occurred. At trial, Hutcherson testified that he had known Thomas for over twenty years, and that Thomas gave him the gun in exchange for $30 worth of crack cocaine. During extensive cross examination he denied that the person who was with Thomas, Blunt, was the one that bartered the gun, Trial

10

tr. vol. 1, p. 164, and denied that he was implicating Thomas in exchange for the government not charging him for his role in the transaction. Thus, the court does not believe a reasonable probability exists that evidence of a self-serving statement by Thomas that he did not possess the firearm would have changed the outcome. In sum, Thomas has not shown that a *Brady* violation occurred, and has shown no ineffectiveness whatsoever in his attorney's performance with respect to this issue.

Next, Thomas argues that his attorney completely abandoned his defense strategy–that he never possessed the gun, instead Blunt did—by aiding the government's prosecution and admitting that Blunt gave the gun to Thomas: "counsel openly conceded before the jury that 'Gerald Blunt gave him the gun.' (See Trial Transcript, Vol. 2, p. 65, paragraphs 15 thru 18)." Memorandum in support of motion at 11.

Thomas cites a portion of his attorney's closing argument which only appears to be an admission that Blunt gave the gun to Thomas when viewed in isolation. When viewed in context—the context the jury heard the argument in—it is clear that the "him" referred to is Hutcherson:

> Detective Titus denies the fact that Leon Thomas told him that the gun was taken from under the seat of Gerald Blunt, that Gerald Blunt gave him the gun. But you got to look at and listen to or use common sense and life experience. . . .
> Leon Thomas allegedly went to the door of Mr. Hutcherson. He got there. He asked Mr. Hutcherson to come out or went in to barter a gun, according to their theory. If he did that, why didn't he just tender the gun inside the home? Why did that gentleman have to come out of the home, come to the car, retrieve the gun and then leave?

11

>	Because it fit with life experience and common sense that he had to come back to the car to get the gun? No. Not if Leon Thomas had it. It[7] fits more with common sense and life experience that he came back to the car to get the gun from Gerald Blunt. And that's what happened, ladies and gentlemen. And I ask you to take that in consideration. Think about it. Fit it in. See if it fits. If it doesn't fit, get rid of it.

Trial tr. vol. 2, p. 65-66. Clearly, rather than abandoning Thomas' defense strategy, counsel was making exactly the point that Thomas contends should have been made.

Nearing the end of his ineffective-assistance grounds, in his second amendment to his § 2255 motion, filed July 30, 2004, Thomas argues that in light of the Supreme Court's decision in *Blakely*,[8] it is clear that his attorneys (Thomas was represented by a new attorney at his resentencing) were ineffective for not objecting to his sentence on Sixth Amendment grounds, by arguing that *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L. Ed. 2d 435 (2000) barred a sentence greater than that called for by his base offense level under the Sentencing Guidelines, and barred applying ACCA, because of factual findings made by the court instead of by a jury. Variations of this ineffective-assistance argument have already been made to the Court of Appeals, which

---

[7] The transcript actually says "if," which the court believes to be a transcription error.

[8] The court assumes that Thomas also would rely on *United States v. Booker,* – U.S. –, 125 S.Ct. 738, 160 L. Ed. 2d 621 (2005), which had not yet been decided when he filed his amendment.

has labeled them "untenable." *Fuller v. United States*, 398 F.3d 644, 650 n. 4 (7th Cir. 2005) (quoting *United States v. Smith,* 241 F.3d 546, 548 (7th Cir. 2001)).[9]

Finally, in his third and last amendment to his § 2255 motion, filed on July 19, 2005 (designated by Thomas as his second amendment), Thomas argues that his attorney was ineffective for not objecting to the use at trial of an out-of-court statement made by Gerald Blunt. As is explained further below, this argument is unsupported by the record: Blunt's out-of-court statement was never presented to the jury. Thus, there is no basis for an ineffective-assistance argument here.

In conclusion, it is the court's view that, rather than making a showing of ineffective assistance of counsel, Thomas has shown that his counsel performed with professional competence and established a viable defense in the face of bad facts. The errors that Thomas points to, on close examination, are not errors, and viewing all of Thomas' grounds as a whole, there was no "overall deficient performance." *Peoples v. United States*, 403 F.3d 844, 848 (7th Cir. 2005).

*Actual Innocence*

In what he enumerates as claim 2 in his original motion, Thomas argues that his attorney was prevented from using highly probative evidence to impeach the testimony of Titus, Fazekas and Jackson because of the government's *Brady* violation, that is, the failure to disclose that portion of his statement in which he allegedly claimed that he

---

[9] It should also be noted that at his resentencing, Thomas' attorney stated that she was preserving "defendant's objection to the armed career criminal count and *Apprendi* grounds." Resentencing transcript at 10.

had never possessed the gun, instead Blunt had. In his first amendment to his motion, filed on June 13, 2003, Thomas elaborates on this argument, asserting that the government's suppression of this evidence prevented him from proving his actual innocence and that his convictions are, therefore, a miscarriage of justice. In other words, Thomas argues that the supposed *Brady* violation provides an independent reason to vacate his convictions.

However, as explained above, the court believes that no exculpatory evidence was suppressed, and that even if evidence existed indicating that Thomas did claim that he never possessed the gun, it would not have affected the outcome. Thus, there was no *Brady* violation, and Thomas' convictions did not result from a miscarriage of justice.

### *Armed Career Criminal Act and Blakely/Booker*

Apart from his ineffective-assistance claim based on these grounds, Thomas, relying on *Apprendi* and cases such as *United States v. Hudspeth*, 42 F.3d 1015 (7th Cir. 1994), argues that sentencing him under the ACCA was improper because his prior criminal convictions were related and should have been counted as a single conviction. Thomas made essentially the same argument in his direct appeal, and the Court of Appeals concluded that he had been properly sentenced under the ACCA. *Thomas*, 280 F.3d at 1159-60. This is the law of the case and may not be relitigated in this § 2255 proceeding unless Thomas shows that the interests of justice favor reexamining the decision. *Peoples*, 403 F.3d at 847-48; *Fuller*, 398 F.3d at 648.

In his second amendment to his § 2255 motion, filed on July 30, 2004, Thomas, although not specifically addressing law-of-the-case doctrine, provides the substance of

that argument. He argues that the decision in *Blakely* (and again, the court assumes that Thomas would also rely on *Booker*) shows that his sentence under both the ACCA and under the Guidelines is invalid because based on facts not found by a jury beyond a reasonable doubt, and must be vacated. Thomas maintains that as *Apprendi* had already been decided at the time of his direct appeal, and because *Blakely* (and, assuredly, *Booker*) are only interpretations of *Apprendi*, there is no retroactivity issue barring relief.

As to retroactivity, the Court of Appeals disagrees with Thomas, holding that the rule from *Blakely* and *Booker* is not available for use in collateral attacks under § 2255. *McReynolds v. United States*, 397 F.3d 479 (7th Cir. 2005). Thus, the portion of Thomas' amendment that maintains that adjustments to his Guidelines offense level were improper cannot proceed. The other half of Thomas' argument, his implied assertion that *Blakely* (and *Booker*) show that the propriety of his ACCA sentence should be re-examined, also must fail. The judicial record of Thomas' prior convictions showed that different dates, and different victims, were involved, *Thomas*, 280 F.3d at 1159-60, and so sentencing him as a recidivist did not run afoul of the rule derived from *Apprendi* in *Blakely* and *Booker*. *United States v. Ngo*, 406 F.3d 839, 841-42 (7th Cir. 2005). Thus, this court will not revisit the Court of Appeals' finding on direct appeal that Thomas was properly sentenced as an armed career criminal.

***Non-receipt of downward departure under Guidelines § 5H1.4***

The final ground stated in Thomas' § 2255 motion before amendment is:

> The defendant is a handicap prisoner and meets the
> requirements for a[n] departure pursuant to 5H1.4. The

> defendant is permanently confined to a wheelchair, the
> defendant has 'no' right leg, and the defendant's health is
> poor. The defendant suffers also from the conditions of
> bipolar disorder.

(Brackets and punctuation as in original). This is Thomas' complete argument on this issue: he does not elaborate further, and provides no medical evidence to support his assertion that he suffers from bipolar disorder.

It does not appear that Thomas is raising this issue in support of his ineffective-assistance claim, and because it is a sentencing issue that could have been raised on direct appeal, it is now waived. However, even if viewed as an ineffective-assistance ground,[10] the evidence at trial showed that, despite having an amputated leg, Thomas was able to drive a car and ambulate quite effectively using crutches. There is simply no indication that there would have been any reason for the court to have found that Thomas suffered from an "extraordinary" physical impairment, as is required by § 5H1.4, such that it would have exercised its discretion to depart downward from the applicable Guidelines range.

## *Improper use of statement under Crawford v. Washington*

In *Crawford*, the Supreme Court held that out-of-court statements that are testimonial in nature violate the confrontation clause and cannot be used against a defendant at trial unless the person who made the statement is unavailable to be a

---

[10] The court notes that at Thomas' resentencing, his attorney stated that she was not asking for a departure under § 5H1.4, but requesting that Thomas be sentenced at the bottom of the applicable range, due to a severe physical impairment, the amputation of his leg. Resentencing tr. at 10.

16

witness at trial, and the defendant had a prior opportunity to cross-examine that person. In his last amendment (which Thomas dubs his "second" amendment) to his § 2255 motion, filed on July 19, 2005, Thomas argues that his conviction must be vacated because the government violated his confrontation clause rights by "using Gerald Blunt['s] statement at trial, and in the jury deliberation room, and at the grand jury" where "Gerald Blunt did not appear at trial." (As noted above, Thomas also asserts that his attorney was ineffective for not objecting to use of Blunt's statement.)

This argument is both factually and legally wrong: factually, because the jury never heard any evidence of Blunt's statement,[11] and legally, because *Crawford* only bars evidentiary use of such statements at trial, not in preliminary proceedings or at sentencing. *See United States v. Roche*, 415 F.3d 614, 618 (7th Cir. 2005) (*Crawford* based on confrontation clause; relevant provision at sentencing is due process clause, not confrontation clause). Moreover, the Court of Appeals has held that *Crawford* is not retroactively available in collateral attacks. *See Bintz v. Bertrand*, 403 F.3d 859, 867 (7th Cir. 2005) (discussing retroactivity in § 2254 proceeding). Thomas simply has no tenable claim based on *Crawford*.

---

[11] It appears that the only time that Blunt's statement was mentioned was during the grand jury's consideration whether to return an indictment against Thomas, a proceeding during which a defendant of course has no right to confront witnesses.

17

**CONCLUSION**

For the reasons explained above, the court finds that the record in this case demonstrates that Thomas' contentions are meritless. Accordingly, his motion for relief under § 2255 in case 2:99 CR 191 is **DENIED**, and the clerk is directed to **ENTER a FINAL JUDGMENT** dismissing the associated civil case, 2:03 CV 203. This dismissal is without prejudice to Thomas' right to seek permission to file a second or successive § 2255 motion in the event that the Supreme Court in the future declares *Booker*, *Blakely* and/or *Apprendi* to apply retroactively in collateral attacks. The clerk shall give immediate notice of this opinion and order to Thomas, to the government, and to the Court of Appeals.

**SO ORDERED.**

ENTER: November 7, 2005

 s/ James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT